Filed on 3/26/2015 2:30:29 PM

**OFFICE OF STAN STANART**
COUNTY CLERK, HARRIS COUNTY, TEXAS
CIVIL COURTS DEPARTMENT

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
3/26/2015 2:34:19 PM
CHRISTOPHER A. PRINE
Clerk

March 26, 2015

1ˢᵗ Court of Appeals
301 Fannin
Houston, Texas 77002

**LETTER OF ASSIGNMENT**

Trial Court Docket Number: 908487
Trial Court Number: Two (2)

**Style:**

| LATRICE L. HARRIS | VS. | HIGHLAND KNOLLS COMMUNITY ASSOCIATION |
|---|---|---|
| **APPELLANT(S)** | | **APPELLEE(S)** |

**Judge:** Jacqueline Lucci Smith

| **Appellant(s) Attorney:** | **Appellee(s) Attorney:** |
|---|---|
| Latrice Harris, Pro Se | Richard E. Bartley, No. 01850500 |
| 2310 Enchanted Park Lane | 14811 St. Mary's Lane, Suite 270 |
| Katy, Texas 77450 | Houston, Texas 77079 |
| Phone: (281) 391-2505 | Phone: (281) 531-0501 |
| Fax: N/A | Fax: N/A |
| E-Mail: N/A | E-Mail: N/A |

Latrice L. Harris, appellant, filed a Notice of Appeal on March 25, 2015 from the Final Judgment that was signed on April 8, 2008.

The Clerk's Record was due to your office on or before June 9, 2008.

/S/Joshua Alegria
Joshua Alegria
Deputy Clerk
P.O. Box 1525
Houston, TX 77251-1525
(713) 755-6421

CASE NO. 908487

COURT NO. Two (2)

PLAINTIFF: Highland Knolls Community Association

VS.

DEFENDANT: Latrice L. Harris

~~ANSWER~~ Notice of Appeal.

I, Latrice Harris would like to file an appeal. I was unaware of the court date. I would like to resolve this matter before my property is sold on April 7, 2015. Because I want to keep the property.

I am in the process of getting a modification on the property at 2310 Enchanted Park Lane and I am waiting for that decesion. I woud appreciate an Appeal, to keep my property.

Thank you

DATE: 3-25-2015

SIGNATURE:

PRINT NAME: LATRICE HARRIS

ADDRESS: 2310 Enchanted Park Lane     TX     Katy, 77450
(STREET)                              (STATE)  (CITY) (ZIP)

PHONE: (281) 391-2505

Form No. H-01-60 (Rev. 01/01/2011)

**RECORDER'S MEMORANDUM:**
At the time of recordation, this instrument was found to be inadequate for the best photographic reproduction because of illegibility, carbon or photo copy, discolored paper, etc. All blackouts, additions and changes were present at the time the instrument was filed and recorded.

2



247585

"CLOSED"

0303M305.08\7-358-135

CAUSE NO. 908,487

| HIGHLAND KNOLLS COMMUNITY ASSOCIATION | § § § | IN THE COUNTY CIVIL COURT |
| --- | --- | --- |
| VS. | § § | AT LAW NUMBER TWO (2) |
| LATRICE L. HARRIS | § § | HARRIS COUNTY, TEXAS |

## AGREED JUDGMENT

On this day came on to be heard HIGHLAND KNOLLS COMMUNITY ASSOCIATION, Plaintiff, and LATRICE L. HARRIS, Defendant, for entry of an Agreed Final Judgment in this cause. The Plaintiff appeared by and through its attorney of record and the Defendant appeared Pro Se, and the parties announced to the Court that they had compromised and settled the issues of law and fact in dispute herein. The Court proceeded to hear the evidence and arguments of the parties supporting the Entry of an Agreed Final Judgment and finds that the Agreed Final Judgment should be entered.

The Court, having read the papers and pleadings on file, is of the opinion that the allegations of Plaintiff's petition have been admitted and that the cause of action is unliquidated. Upon due and sufficient evidence submitted to the Court, the Court finds that Plaintiff has been damaged in the amount of $1,533.23 by Defendant, that Plaintiff is entitled to prejudgment interest in the amount of $47.46, that Plaintiff is entitled to an award of reasonable and necessary attorney's fees from Defendant, LATRICE L. HARRIS, through the trial of this cause in the amount of $2,340.00; that Plaintiff is entitled to recover the additional amount of $1,200.00 in attorney's fees in the event Defendant files a Motion for New Trial; that Plaintiff is entitled to recover the additional amount of

0303M305 08\7-358-135

$4,200.00 in attorney's fees in the event of an appeal to the Court of Appeals; that Plaintiff is entitled to recover the additional amount of $4,200.00 in attorney's fees in the event a Petition for Review is taken to the Supreme Court of the State of Texas; and that Plaintiff is entitled to recover the additional amount of $1,200.00 in attorney's fees in the event a Petition for Review is granted and appeal is taken to the Supreme Court of the State of Texas. It is, therefore,

ORDERED, ADJUDGED and DECREED that Plaintiff, HIGHLAND KNOLLS COMMUNITY ASSOCIATION, shall have and recover from Defendant, LATRICE L. HARRIS, damages in the amount of $1,533.23, prejudgment interest in the amount of $47.46, and reasonable attorney's fees in the amount of $2,340.00, and if Defendant, LATRICE L. HARRIS, files a Motion for New Trial, Plaintiff is entitled to recover the additional sum of $1,200.00; if an appeal is taken to the Court of Appeals, Plaintiff is entitled to recover the additional sum of $4,200.00; if a Petition for Review is taken to the Supreme Court of the State of Texas, Plaintiff is entitled to recover the additional sum of $4,200.00; and if the Petition for Review is granted and appeal is taken to the Supreme Court of the State of Texas, Plaintiff is entitled to recover the additional sum of $1,200.00. It is, further,

ORDERED, ADJUDGED and DECREED that the Judgment hereby rendered shall bear interest at the rate of ten (10) percent per annum from the date of this Judgment until paid. It is, further,

ORDERED, ADJUDGED and DECREED that Plaintiff, HIGHLAND KNOLLS COMMUNITY ASSOCIATION, have a lien for assessments, prejudgment interest, costs, and attorneys' fees as set out in the Declaration of Covenants, Conditions and Restrictions recorded at

4

0303M305.08\7-358-135

Clerk's File No. N453622 of the Official Public Records of Real Property of Harris County, Texas, at Article IV, a copy of which Article is attached hereto, and/or Section 204.010(a)(12) of the Texas Property Code on the following described property, to-wit:

> Lot Twenty-seven (27), in Block Three (3), of Oak Park Trails, Section Eleven (11), a subdivision in Harris County, Texas, according to the map or plat thereof recorded under Film Code No. 542033 of the Deed Records of Harris County, Texas.

It is, further,

ORDERED, ADJUDGED and DECREED that an order of sale be issued to any Sheriff or Constable within the State of Texas, to seize and to sell the above-described property the same as under execution in satisfaction of this Judgment. It is, further,

ORDERED, ADJUDGED and DECREED that if the property cannot be found, or if the proceeds of the sale are insufficient to satisfy the Judgment, the Sheriff or Constable shall take the money or unpaid balance out of the other property of the Defendant, as in the case of ordinary execution. It is, further,

ORDERED, ADJUDGED and DECREED that if any surplus remains after the payment of sums adjudged to be due, it should be deposited into the Registry of the Court to be paid first in satisfaction of any amounts owed to Plaintiff by Defendant through the date of payment of said sums, for assessments, costs of collection, interest, attorney's fees or other charges outstanding on the property or properties the subject of this Judgment and which sums are evidenced by the lien or liens in favor of Plaintiff, properly filed in the Real Property Records of Harris County, Texas, and if any surplus remains thereafter, it should be refunded to Defendant. It is, further,

5

ORDERED, ADJUDGED and DECREED that all costs of Court expended or incurred in this cause are hereby adjudged against the Defendant and all writs and processes for the enforcement and collection of this Judgment for costs of Court may issue as necessary.

All relief not expressly granted herein is denied.

SIGNED this _____ day of __ **APR. 0 8 2008** 20_____.

_____
JUDGE PRESIDING

APPROVED AS TO FORM AND SUBSTANCE:

BARTLEY & SPEARS, P.C.

By:_____
Richard E. Bartley
State Bar No. 01850500
14811 St. Mary's Lane, Suite 270
Houston, Texas 77079
281/531-0501 Telephone
281/493-1539 Telecopier

ATTORNEYS FOR PLAINTIFF

APPROVED AND AGREED TO:

_____
LATRICE L. HARRIS, Defendant

UU9-59-1887

Class A. Class A members shall be all owners with the exception of the Declarant and shall be entitled to one (1) vote for each lot owned. When more than one person holds an interest in any lot, all such persons shall be members. The vote for such lot shall be exercised as they among themselves determine, but in no event shall more than one vote be cast with respect to any lot.

Class B. The Class B members shall be the Declarant and shall be entitled to three (3) votes for each lot owned. The Class B membership shall cease and be converted to Class A membership on the happening of either of the following events, whichever occurs earlier:

a) when the total votes outstanding in Class A membership equals the total vote outstanding in Class B membership including duly annexed areas, or

b) on January 1, 1996.

## ARTICLE IV

## COVENANT FOR MAINTENANCE ASSESSMENTS

Section 4.1 Creation of the Lien and Personal Obligation of Assessments: The Declarant, for each lot within the properties, hereby covenants, and each owner of any lot by acceptance of a deed therefor, whether or not it shall be so expressed in such deed, is deemed to covenant and agree to pay to the Association: a) annual assessments or charges which shall be payable as hereinafter set forth, and b) special assessments for capital improvements, such assessments to be established and collected as hereinafter provided. The annual and special assessments, together with interests, costs and reasonable attorney fees, shall be a charge on the land and shall be a continuing lien upon the property against which each such assessment is made. Each such assessment, together with interest, costs and reasonable attorney fees, shall also be the personal obligation of the person who was the owner of such property at the time when the assessment fell due. The personal obligation for delinquent assessments shall not pass to his successors in title unless expressly assumed by them.

7

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

Section 4.2 Purpose of Assessments: The assessments levied by the Association shall be used exclusively to promote the recreation, health, safety and welfare of the residents of the properties, including, but not limited to, improvement and maintenance of the common area, lighting, improving and maintaining the streets and roads, collecting and disposing of garbage and refuse, employing policemen and/or watchmen, caring for vacant lots, esplanades, entrance ways and similar facilities serving the properties, and in doing any other things necessary or desirable which the Board of Directors of the Association may deem appropriate to keep the properties neat and presentable.

Section 4.3 Maximum Annual Assessment: Until January 1 of the year immediately following the conveyance of the first lot to an owner, the maximum annual assessment shall be Two Hundred Ten and No/100 Dollars ($210.00) per lot. From and after the first day of January of the year immediately following the date of commencement of the first annual assessment, the maximum annual assessment may be increased by the Board of Directors of the Association, effective the first day of January of each year, in conformance with the rise, if any, in the Consumer Price Index for Urban Wage Earners and Clerical Workers published by the Department of Labor, Washington, D. C., or any successor publication, for the preceding month of July or alternatively, by an amount equal to a five percent (5%) increase over the prior years annual assessment, whichever is greater, without a vote of the Members of the Association. The maximum annual assessment may be increased above that established by the Consumer Price Index formula or the above-mentioned percentage only by approval of two-thirds (2/3rds) of each class of Members in the Association present and voting at a meeting duly called for this purpose. In lieu of notice and a meeting of Members as provided in the By-Laws of the Association, a door to door canvass may be used to secure the written approval of two-thirds (2/3rds) of each class of Members for such increase in the annual assessment or in the special assessment for capital improvements as provided-below. This increase shall become

8

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

effective on the date specified in the document evidencing such approval only after such document has been filed for record in the Office of the County Clerk of Harris County, Texas. After consideration of current maintenance costs and future needs of the Association, the Board of Directors may fix the annual assessment at an amount not in excess of the maximum amount approved by the Members.

Section 4.4 Special Assessments for Capital Improvements: In addition to the annual assessments authorized above, the Association may levy, in any assessment year, a special assessment applicable to that year only for the purpose of defraying, in whole or in part, the cost of any construction, re-construction, repair or replacement of a capital improvement upon the common area, including fixtures and personal property related thereto, provided that any such assessment shall have the vote or written assent of two-thirds (2/3rds) of each class of members.

Section 4.5 Notice and Quorum for any Action Authorized Under Section 4.3 and 4.4: Written notice of any meeting called for the purpose of taking any action authorized under Section 4.3 or 4.4 shall be sent to all members not less than thirty (30) days nor more than sixty (60) days in advance of the meeting. At the first such meeting called, the presence of the members or of proxies entitled to cast sixty percent (60%) of all of the votes of each class of membership shall constitute a quorum. If the required quorum is not present, another meeting may be called subject to the same notice requirements, and the required quorum at the subsequent meeting shall be one-half (1/2) of the required quorum at the preceding meeting. No such subsequent meeting shall be held more than sixty (60) days following the preceding meeting.

Section 4.6 Rate of Assessment: All lots in Memorial Parkway, Section Seventeen shall commence to bear their applicable maintenance fund assessment simultaneously and lots owned by Declarant are not exempt from assessment. Lots shall be divided into two classes; Class A lots and Class B lots. Class A lots shall be those lots on which a permanent home has been constructed

and title to such lot has been conveyed to the resident purchaser thereof. Class B lots shall be all other lots which are owned by Declarant, a builder, or building company and shall be assessed at the rate of one-half (1/2) of the annual assessment above and shall begin to accrue on the happening of either of the following events whichever occurs later:

a) when any lot has been improved with paved streets, sewer and other utilities, or

b) on the 1st day of January, 1992.

Section 4.7  Date of Commencement of Annual Assessments: The entire accrued charge on each Class B lot (determined in accordance with Section 4.6 above) shall become due and payable on the date such lot converts from a Class B lot to a Class A lot by reason of the conveyance of title of such lot to a resident purchaser thereof. The annual assessment charge on Class A lots shall be as hereinbefore provided (according to Section 4.3 and 4.4). The initial charge shall accrue and become due and payable to each such lot on the day such lot converts from a Class B lot to a Class A lot by reason of the conveyance of title of such lot to a resident purchaser thereof. The determination of the amount of such initial charge shall be adjusted according to the number of months remaining in the calendar year. The annual assessment on each Class A lot and thereafter shall accrue and become due and payable on the first day of January of each succeeding year. The Board of Directors shall fix the amount of the annual assessment against each lot at least thirty (30) days in advance of each annual assessment period. Written notice of the annual assessment shall be sent to every owner subject thereto. The Association shall, upon demand, and for a reasonable charge, furnish a certificate signed by an officer of the Association setting forth whether the assessments on a specified lot have been paid.

Section 4.8  Effect on Non-payment of Assessments - Remedies of the Association: Any assessment not paid within thirty (30) days after the due date shall bear interest from the due date at the rate of ten percent (10%) per annum. The Association may

Page 8

bring an action at law against the owner personally obligated to pay the same, or foreclose the lien against the property. Each such owner, by his acceptance of a deed to a lot, hereby expressly vests in the Association, or its agents, the right and power to bring all actions against such owner personally for the collection of such charges as a debt and to enforce the aforesaid lien by all methods available for the enforcement of such liens, including judicial foreclosure by an action brought in the name of the Association in a like manner as a mortgage or deed of trust lien on real property, and such owner hereby expressly grants to the Association a power of sale in connection with the said lien. The lien provided for in this section shall be in favor of the Association and shall be for the benefit of all other lot owners. No owner may waive or otherwise escape liability for the assessments provided for herein by non-use of the common area or abandonment of his lot.

Section 4.9 Subordination of the Lien to Mortgages: The lien of the assessments provided for herein shall be subordinate to the lien of any first mortgage. Sale or transfer of any lot shall not affect the assessment lien. However, the sale or transfer of any lot pursuant to mortgage foreclosure or any proceeding in lieu thereof, shall extinguish the lien of such assessments as to payments which become due prior to such sale or transfer. No sale or transfer shall relieve such lot from liability for any assessments thereafter becoming due or from the lien thereof.

Section 4.10 Exempt Property: All properties dedicated to, and accepted by, a local public authority and all properties owned by a charitable or non-profit organization exempt from taxation by the laws of the State of Texas shall be exempt from the assessments created herein. However, no land or improvements devoted to dwelling use shall be exempt from said assessments.

Section 4.11 Insurance:

a) The Board of Directors of the Association shall obtain and continue in effect blanket property insurance to insure the

11

buildings and structures in the common area and the Association against risks of loss or damage by fire and other hazards as are covered under standard extended coverage provisions, and said insurance may include coverage against vandalism.

b) The Board of Directors of the Association may obtain comprehensive public liability insurance in such limits as it shall deem desirable, insuring the Association, its Board of Directors, agents and employees, and each owner, from and against liability in connection with the common area.

c) All costs, charges and premiums for all insurance that the Board of Directors authorized as provided herein shall be a common expense of all owners and be a part of the maintenance assessment.

## ARTICLE V

### ARCHITECTURAL CONTROL

Section 5.1 No building shall be erected, placed or altered on any lots until the building plans and specifications and a plot plan showing the locations of such building has been approved in writing as to conformity and harmony of external design with existing structures in the subdivision, and as to location with respect to topography and finished grade elevation, by an Architectural Control Committee composed of Arthur Coburn, III, Kenneth J. Coquyt, and Stephen M. Pierce, or a representative designated by a majority of the members of said committee. In the event of death or resignation of any member of said committee, the remaining member, or members, shall have full authority to appoint a successor member or members who shall thereupon succeed to the powers and authorities of the member so replaced. In the event said committee or its designated representative, fails to approve or disapprove such design and location within forty-five (45) days after said plans and specifications have been submitted to it, such approval will not be required and this covenant will be deemed to have been fully complied with. All decisions of such committee shall be final and binding and there shall be no

RECORDER'S MEMORANDUM.
At the time of recordation, this instrument was found to be inadequate for the best photographic reproduction because of illegibility, carbon or photo copy, discolored paper, etc. All blockouts additions and changes were present at the time the instrument was filed and recorded.